UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| FERMAN WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:21-cv-736-MHH-GMB |
| MICHAEL JONES, *et al.*, | ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Ferman Williams filed a *pro se* complaint seeking monetary damages under 42 U.S.C. § 1983 for violations of his civil rights. Doc. 1. He names as defendants Lieutenant Michael Jones,[1] Officers Dustin Brewer and Kenneth Noe, and Sergeant Jeremy Pelzer. Doc. 1 at 3. Williams seeks monetary relief in the form of compensatory damages of $300,000 and punitive damages of $50,000. Doc. 1 at 4. The complaint is before a Magistrate Judge for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons to follow, the Magistrate Judge recommends that the defendants' motion for summary judgment (Doc. 9) be granted in part and denied in part.

---

[1] Williams designated Lt. Jones and Michael Jones as defendants in the caption of his complaint, but both names refer to the same person.

## I. PROCEDURAL HISTORY

The court entered an Order for Special Report directing the Clerk of Court to forward copies of the complaint to the defendants and instructing them to file special reports addressing Williams' factual allegations. Doc. 6. The defendants filed one special report with supporting evidence. Doc. 9. The court construed the special report as a motion for summary judgment and notified Williams that he had 21 days to respond to the motion by filing affidavits or other evidence. Doc. 10. The court granted Williams' motion for an extension of time to respond, and Williams filed a timely response.[2] Docs. 12 & 13.

In his response, Williams alleged that a camera installed in the L-Dormitory of Limestone Correctional Facility recorded the alleged assault. Doc. 13 at 1. Williams requested for the court to subpoena the recording. Doc. 13 at 2. The court ordered defense counsel to file a declaration from an appropriate Law Enforcement Services Division ("LESD") official attesting to the veracity of counsel's previous representation that the LESD did not have any video recordings of the incident. Doc. 14. The defendants filed an affidavit from Kelley Smith, LESD Supervisory

---

[2] In his response, Williams alleges that he was attacked by "Aaron M. Brolsma, Alex C. Andrews, and at least 5 different more officers." Doc. 13 at 1. Williams also claims that other correctional officers have retaliated against him and that he has been refused medical attention. Doc. 13 at 2. These claims are not properly before the court. Williams did not name Officers Brolsma or Andrews in his complaint and has not made any specific allegations against them, nor did he state any retaliation claims in his complaint. Williams also has not moved to amend his complaint to add additional defendants or claims. Accordingly, the court will not address these allegations in this report and recommendation.

Agent, stating that she had found no recordings related to the March 21, 2021 incident. Doc. 15-1. The matter is now before the court on the defendants' motion for summary judgment.

## II.  STANDARD OF REVIEW

Because the court construed the defendants' special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs its resolution. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The moving party has the initial burden of showing there are no genuine issues of material fact and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Williams has the ultimate burden of proving his claims, so the defendants will be entitled to judgment as a matter of law on any claim unless Williams is able to show some evidence supporting each element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine

> issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

In determining whether to grant summary judgment, however, the court will consider any "specific facts" pled in a *pro se* plaintiff's sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Williams is *pro se*, the court must construe his complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III.  SUMMARY JUDGMENT FACTS[3]

On March 21, 2021 at approximately 8:00 p.m., Williams alleges that Officer Brewer sprayed him with mace in the lobby of the L-Dormitory at Limestone Correctional Facility. Doc. 1 at 3. Brewer denies spraying Williams with mace (Doc. 9-2 at 1), and Officer Brolsma admits that he did use mace to subdue Williams. Docs. 9-4 & 9-6.  Both Brewer and Brolsma state that Williams was loud and

---

[3] Consistent with the summary judgment standard, the following facts are undisputed or, if disputed, taken in the light most favorable to Williams. The defendants' version of these events differs from Williams' recollection. Where appropriate, the court references the defendants' statements in this recitation of facts. However, at the summary judgment stage, the court credits Williams' version of events.

disorderly before the mace, did not comply with Brolsma's order to put his hands behind his back to be handcuffed, and physically resisted Brewer's attempt to handcuff him. Doc. 9-4 at 2.

Williams does not dispute the officers' description of this encounter in his response. Doc. 13. During the altercation, Williams placed Brewer in a chokehold. Doc. 9-2 at 1. Brolsma then struck Williams' legs multiple times with his baton, and Officer Noe intervened to help the other officers. Doc. 9-1; 9-4 at 2. Williams eventually released Brewer. Docs. 9-1; 9-2 at 1; 9-4 at 2. Williams also tried to remove Noe's baton from his belt, but Brewer took the baton away. Docs. 9-1 at 1; 9-2 at 1. At about 8:03 p.m., Pelzer and Officers Allen and White arrived on the scene. Doc. 9-6. White handcuffed Williams "to the rear and double locked." Docs. 9-1 at 1; 9-6.

According to Williams, Brewer, Noe, and several other officers then assaulted him while Jones watched. Doc. 1 at 3; Doc. 13 at 1. Jones denies being "present during the incident." Doc. 9-5. Williams did not allege in his complaint that Pelzer participated in the assault, but in a later filing he explained that "Pelzer [also] helped . . . officers attack me in handcuffs after the initial assault." Doc. 13 at 1.

A medical professional decontaminated Williams. Doc 9-6. Nurse Finley completed Williams' body chart, noting that Williams "got beat," had been sprayed with mace, and had a red face and eyes but no visible injuries. Docs. 9-6 & 9-7.

## IV.  ANALYSIS

**A.     Official Capacity Claims**[4]

To the extent Williams brings claims against the defendants in their official capacities, these claims cannot survive summary judgment because the Eleventh Amendment bars § 1983 claims against the state or an agency of the state. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity "has also been extended to state officials, acting in their official capacity, where an agency or individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Id*.  Congress has not waived, and Alabama has not abrogated, the state's Eleventh Amendment immunity. *Id*. at 1234.  "Consequently, Alabama state officials are immune from claims brought against them in their official capacities." *Id*.  For this reason, the defendants are immune from suit in their official capacities for claims seeking monetary damages.

---

[4] Williams did not indicate in his complaint whether he intended to sue the defendants in their individual or official capacities. Doc. 1.  The court construes the complaint to include both individual and official capacity claims due to the nature of his factual allegations.

## B. Individual Capacity Claims

The Eleventh Amendment does not immunize state officials from § 1983 claims against them in their individual capacities. *Melton*, 841 F.3d at 1234. Williams claims that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when Brewer, Noe, and Pelzer used excessive force against him and when Jones witnessed the use of force and did not intervene to help him. Doc. 1 at 3; Doc. 9 at 1.

The Eighth Amendment's proscription of cruel and unusual punishments protects prisoners from prison officials' use of excessive force. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The federal courts analyze excessive force claims under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). This analysis includes both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind'" and (2) whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

For the subjective component of the analysis, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. Relevant factors include: (1) the need for any application of force, (2) the relationship between that need and

the amount of force used, (3) the threat reasonably perceived by the responsible official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. at 6; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

The objective component of an excessive force claim "focuses on whether the official's actions were harmful enough . . . or sufficiently serious to violate the Constitution." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (internal quotation marks and citations omitted). The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Instead, "the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1265 (quoting *Wilkins*, 559 U.S. at 37). Although the Eleventh Circuit has rejected a bright-line standard mandating a more-than-*de-minimis* injury, the Eighth Amendment still "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Sconiers*, 946 F.3d at 1265–67 (citing *Wilkins*, 559 U.S. at 37–38).

"Prison administrators . . . should be accorded wide-ranging deference in the

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 5 20 (1979). Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998). With these legal principles in mind, the court turns to Williams' claims of excessive force against Brewer, Noe, and Pelzer.

### 1. *Force Before Handcuffing*

While Williams' allegations of force are generalized in his complaint, Williams explains in his response that the officers "attacked [him] in handcuffs after the initial assault." Doc. 1 at 3; Doc. 13 at 1. Williams makes only one specific allegation of force before being handcuffed: Brewer's use of mace. Doc. 1 at 3. Williams provided no detail about the events before he was handcuffed. On the other hand, Brewer denied using mace, and Brolsma testified by affidavit that he used mace on Williams after he was loud and disorderly and did not comply with orders. Doc. 9-2 at 1; Docs. 9-4 & 9-6. The defendants' affidavits establish that Williams placed Brewer in a chokehold and tried to take Noe's baton before he was handcuffed, which caused Brolsma to strike Williams' legs with his baton. Doc. 9-1; Doc. 9-2 at 1; 9-4 at 2. Notably, Williams does not dispute any of these assertions in his response. Doc. 13.

Thus, to the extent Williams' complaint and response can be read to claim that Brewer, Noe, and Pelzer used force against him before handcuffing him, the court finds that this use of force was not excessive. The evidence shows that Williams was disorderly, did not comply with orders, resisted efforts to be handcuffed, placed Brewer in a chokehold, and tried to grab Noe's baton. Based on these facts, Williams posed a threat to officers, other inmates, and himself. *See Moore v. Gadson*, 2021 WL 4099245, at *4 (N.D. Ala. Aug. 11, 2021) (finding that an officer's application of force against a prisoner, which included multiple baton strikes to the prisoner's arm and upper body, was not excessive when the prisoner disobeyed officer's orders). Accordingly, Brewer, Noe, and Pelzer are due summary judgment on any excessive force claims relating to their actions before they handcuffed Williams.

### 2. *Force After Handcuffing*

Taking the facts in the light most favorable to Williams, there is a genuine dispute of material fact as to whether Brewer, Noe, and Pelzer used excessive force against him after they handcuffed him. Williams contends that these three officers attacked him while he was in handcuffs. Doc. 1 at 3; Doc. 13 at 1. The defendants' responses to Williams' allegations vary: Brewer states that all force ceased after Williams was handcuffed (Docs. 9-2; 9-4 at 2), Noe does not address the assault claim (Doc. 9-1 at 1), and Pelzer simply states that "no force was used in [his] presence." Doc. 9-3. At the summary judgment stage, the court must take Williams'

sworn allegations as true.

The law of the Eleventh Circuit "prohibit[s] the use of excessive force by a prison guard against an inmate" who is restrained and "pose[s] no continuing threat." *Davis v. Locke*, 936 F.2d 1208, 1213 (11th Cir. 1991) (citations omitted) (threatening a handcuffed inmate with slurs and punishment and then pulling him by his ankles from a cage, causing him to fall, constitutes excessive force); *see also Harris v. Chapman*, 97 F.3d 499, 505–06 (11th Cir. 1996) (restraining an inmate with a towel and then beating and verbally harassing him after he refused to submit to a haircut is sufficient to support a jury's finding of an Eighth Amendment violation); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir. 1988) (holding allegations that officers "deliberately broke [inmate's] elbow after he had ceased to resist their efforts to return him to his cell" were sufficient to support an Eighth Amendment excessive force claim at summary judgment); *Harris v. Whitehead*, 2007 WL 23900964, at *7–8 (M.D. Ala. Jul. 30, 2007) (finding unconstitutional force where the defendants used physical force on an inmate after he was handcuffed and had ceased physical resistance but remained verbally uncooperative).  In short, "[i]t is excessive force for a jailer to continue using force against a prisoner who already has been subdued." *Nasseri v. City of Athens*, 373 F. App'x 15, 19 (11th Cir. 2010).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, Williams' claims and the defendants' affidavits create a "a classic swearing match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Accordingly, summary judgment is due to be denied as to Williams' excessive force claims against Brewer, Noe, and Pelzer to the extent his claims relate to force used after they handcuffed him.

### 2. *Failure to Intervene*

Williams claims that Jones did not help him when Brewer, Noe, and Pelzer used excessive force against him. Doc. 1 at 3; Doc. 13 at 1. Specifically, Williams alleges that Jones "just stood and watched" (Doc. 1 at 3) the assault "without trying to stop it." Doc. 13 at 1. Jones responds that he "was not present during the incident." Doc. 9-5.

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009). For a failure-to-intervene claim to succeed, the officer must have observed his fellow officer's use of excessive force and had both the time and ability to intervene. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

Taking Williams' allegations as true, Jones was present while Brewer, Noe, and Pelzer assaulted Williams after he was handcuffed and no longer resisting. If

12

Williams can prove these facts at trial and show that Jones had the ability to intervene, Williams would establish Jones' wrongful failure to intervene. For these reasons, Jones' motion for summary judgment on Williams' Eighth Amendment failure-to-intervene claim is due to be denied.

## V.  RECOMMENDATION

For the reasons above, the Magistrate Judge RECOMMENDS that the motion for summary judgment (Doc. 9) be GRANTED in part and DENIED in part as follows:

1. The motion for summary judgment as to Williams' claims against all defendants in their official capacities be GRANTED;

2. The motion for summary judgment as to Williams' claims against Brewer, Noe, and Pelzer in their individual capacities for any force they used against Williams before he was handcuffed be GRANTED;

3. The motion for summary judgment as to Williams' claims against Brewer, Noe, and Pelzer in their individual capacities for any force they used against Williams after he was handcuffed be DENIED.

4. The motion for summary judgment as to Williams' claims against Jones for failure to intervene be DENIED.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days.**  The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations.  The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal

issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE and ORDERED on July 6, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE